# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHONG WEI DONG, | Case No. 1:26-cv-00458-JLT-EPG-HC |
| Petitioners, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |
| v. | |
| WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Plaintiff is a citizen of The People's Republic of China who entered the United States from Mexico on January 3, 2020, without inspection, admission, or parole. (ECF No. 12-1 at 5–6.[1]) On February 19, 2020, Petitioner had an interview with an asylum officer to determine if he had a credible fear of persecution in his home country. The asylum officer found that Petitioner did not have a credible fear of persecution. On March 4, 2020, an immigration judge ("IJ")

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

reviewed and affirmed the negative credible fear finding and issued a final order of removal. (ECF No. 12-1 at 11, 14.)

On March 16, 2020, Petitioner was paroled and released from detention. (ECF No. 12-1 at 3, 11.) On October 21, 2025,[2] Petitioner was re-detained. (ECF No. 12-1 at 10.)

On January 20, 2026, Petitioner filed a petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1 at 6–17.) The Court also construed the petition "as raising a due process claim regarding Petitioner's re-detention." (ECF No. 5 at 1.) On February 23, 2026, Respondents filed an answer. (ECF No. 12.) To date, no traverse has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition

---

[2] The parties give differing dates for Petitioner's re-detention. The petition states October 23, 2025. (ECF No. 1 at 5.) The deportation officer's declaration states October 22, 2025. (ECF No. 12-1 at 3.) However, the Form I-213 states: "DONG was taken into custody by DOs T. Auer and G. Alvarez without incident on October 21, 2025, at approximately 1550." (ECF No. 12-1 at 10.)

> is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the undersigned recommends finding that Petitioner has a protected liberty interest in remaining out of immigration custody.

**B.  Mathews Test**

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration

detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1162 (E.D. Cal. 2025). "Section 241.13(i) permits revocation of release 'if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Id. (quoting 8 C.F.R. § 241.13(i)(2)). "Upon revocation, the noncitizen must 'be notified of the reasons for the revocation of his or her release,' and given 'an opportunity to respond to the reasons for revocation stated in the notification.'" Vijil Acosta v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-00530-TLN-EFB, 2026 WL 350831, at *4 (E.D. Cal. Feb. 9, 2026) (quoting 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3)).

Here, although a deportation officer declares that Petitioner "was taken into custody to effectuate the final order of removal," (ECF No. 12-1 at 3), there is nothing in the record indicating that Petitioner was provided notice with the reasons for the revocation of his release or given an opportunity to respond. Further, although a deportation officer declares that on "January 21, 2026, travel documents were requested by ERO [Enforcement and Removal Operations] from the consulate of The Peoples Republic of China and the request is currently pending," (ECF No. 12-1 at 3), "Respondents fail to explain why China did not issue a travel document in the past or why China is likely to issue a travel document for petitioner in the reasonably foreseeable future." Yan-Ling X., 813 F. Supp. 3d at 1164. See Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025) (finding "general assertion that ICE is 'mak[ing] efforts' to obtain travel documents for petitioner . . . not compelling" because

"Respondents do not identify any specific efforts they have made to obtain a travel document from Vietnam for petitioner, much less whether they have any indication from Vietnam that it is likely to issue such a travel document"). "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards . . . is high.'" Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *10 (E.D. Cal. Nov. 12, 2025) (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a hearing to determine whether re-detention was warranted. Petitioner has demonstrated that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a hearing, and that the governmental burden in providing such procedure is quite minimal. Accordingly, the undersigned recommends granting the petition on the construed due process claim challenging Petitioner's re-detention.[3] See Vijil Acosta, 2026 WL 350831 (finding detainee subject to final order of removal who had been released and re-detained "was entitled to notice and a hearing to determine whether re-detention

---

[3] In light of this conclusion, the Court declines to address Petitioner's prolonged detention claim.

was warranted," "Respondents did not provide either," finding likelihood of success on the merits of procedural due process claim was shown, and granting temporary restraining order); Falla Portillo v. Facility Dir., No. 1:26-cv-00663-DAD-EFB, 2026 WL 279895 (E.D. Cal. Feb. 3, 2026) (finding ICE's failure to provide detainee subject to final order of removal who had been released and re-detained "with written notice regarding the reason for the revocation of her release, and an informal interview where she would have the opportunity to respond to the reasons for revocation likely violated due process and that petitioner is likely to succeed on the merits of her due process claim" and granting preliminary injunction).

### C. Appropriate Remedy

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang v. Albarran, No. 1:25-CV-01308 JLT EPG, --- F. Supp. 3d ----, 2026 WL 279888, at *8 (E.D. Cal. Feb. 3, 2026) (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). "[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute and ICE fails to adhere to it, the challenged action is invalid." Huang, 2026 WL 279888, at *7 (quoting Yan-Ling X., 2025 WL 3123793, at *6).

Accordingly, the undersigned recommends finding that Petitioner's immediate release from custody is warranted. See Yang, 2025 WL 2791778, at *5 (finding "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1696526, at *2, 3 (D. Kan. June 17, 2025) ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations," including not being "granted the required interview upon the revocation of his release," "that revocation has no effect, and petitioner is entitled to his release[.]"); Yan-Ling X., 813 F. Supp. 3d at 1167 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under

the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante[.]"). Further, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 2026 WL 145631, at *9 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on the construed due process claim challenging Petitioner's re-detention.

2. Respondents be directed to immediately release Petitioner from custody under the conditions of his most recent order of supervision.

3. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 13, 2026**                          /s/ _Erica P. Grosjean_

UNITED STATES MAGISTRATE JUDGE